Case number 20-1432, Western Arkansas, Christopher De Rossitte v. Correct Care Solutions, et al. Ms. Cox, it looks like that you have been appointed, you've been accepted an appointment to represent your client as a civil appointment, and we do appreciate your accepting this case. And you can proceed with your argument when you're ready. Good afternoon, and may it please the court. An inmate must rely on prison authorities to treat his medical needs. If they do not provide medical treatment, his needs will simply not be met. That is what happened here. Mr. De Rossitte, an inmate incarcerated in the Arkansas Department of Corrections, has suffered for years from an undiagnosed medical condition, as well as diagnosed hearing loss and diagnosed orthopedic issues, which have left him confined to a wheelchair and ultimately led to the amputation of his right foot and ankle. Mr. De Rossitte has repeatedly requested treatment, but that treatment has been delayed or denied by appellees. Mr. De Rossitte's health issues are well documented in the record, as are his requests for treatment and appellees' denials of those requests. Mr. De Rossitte's Eighth Amendment claim turns on the question of whether appellees acted with deliberate indifference in denying him medical care. His retaliation claim turns on whether appellees acted with retaliatory intent. But this court need not decide either of those questions today. The question before this court is whether the evidence in the record is sufficient to create an issue of material fact for a jury to decide at a trial. Counselor, let me follow up on that. What does the evidence in the record show about whether your client had at least one functioning hearing aid at all times? So the evidence in the record shows that Mr. De Rossitte had a hearing aid, but that hearing aid was not functional for at least a year and was repeatedly not functional when he did not have hearing aid batteries to power the hearing aid. And there were delays of days, weeks at a time, repeated delays where he did not receive batteries when requested and was not able to hear for that reason. So perhaps the opposing counsel can answer that question when it's his turn. But that seems to create an issue of material fact. Yes, Your Honor. There is a dispute of fact as to whether he had a functioning hearing aid. But there is evidence in his medical records and his grievances where he says he did not have a functioning hearing aid, where he went days or weeks at a time without a functioning hearing aid. And some of those grievances were found to have merit. So there is, at minimum, an issue of material fact that a jury would have to weigh the evidence and decide. In addition to his hearing loss claims, which we briefly discussed, Mr. De Rossitte has also suffered since 2015 from a painful and frequently debilitating medical condition, which has not been properly diagnosed or treated. To succeed on his denial of medical claim, care claim at trial, Mr. De Rossitte must prove that his needs were objectively serious, first, and second, that athletes were deliberately indifferent to those needs. Mr. De Rossitte's undiagnosed condition is objectively serious because it is a painful condition that he has suffered from for years. This court has found that an untreated, painful medical condition is objectively serious. Mr. De Rossitte also suffers from orthopedic issues. This is a diagnosed condition that is in his medical records. Diagnosed conditions are also objectively serious as a matter of law. Counsel, it seems as to the orthopedic, I understand your argument, at least as you introduced it, that I think that there was ultimately perhaps an amputation. But as I read the deposition of your client, he expressly disavowed any reliance on that particular injury or, I guess, problem, medical problem for purposes of this case. He said something like, well, that's for another another day or another case. So in the deposition testimony that you're referring to that was cited in a police brief, Mr. De Rossitte did express some confusion on how he was presenting his claims before the court. Just to note, Mr. De Rossitte was not represented by counsel at that time. So he did not have the benefit of counsel in crafting his claims. But he did state in deposition that he intended to introduce evidence of orthopedic issues and the denial of care of those issues at trial under the general denial of medical care claim that he was asserting. So I think he was trying to make that. I'm sorry, I didn't mean to interrupt. Go ahead and finish. I think he was trying to make the distinction there that he was not bringing a separate claim just for his orthopedic issues, but he saw that as further evidence that police had denied medical care over a period of years. And is that how you understand it, then, that that's that that's just an evidentiary matter for for a trial down the road? Yes, exactly, Your Honor. And he also made clear in his deposition testimony he wasn't seeking damages specifically for that claim. But it's important to note that Mr. De Rossitte's main goal here is to seek injunctive relief to have his undiagnosed condition diagnosed and treated. And that is his primary goal in this litigation. So I think some of the confusion arose in the deposition on whether that was a separate claim and whether he was seeking damages specific to that claim. No, I'm interested in the argument about diagnosed and treated, because there seems to be some evidence in the record that this condition, which at some point he thought was MRSA, but has never been in fact diagnosed, has been successfully resolved as a result of kind of conservative treatment with ointments and antibiotics. And obviously, from your statement, that's that's not what he's really claiming. And so I'm trying to figure out what exactly is the nature of his claim as relates to the undiagnosed illness. So Mr. De Rossitte's position is that his undiagnosed condition has yet to be diagnosed to this day and has not been properly treated.  So I'm trying to figure out what exactly is the nature of his claim as relates to the undiagnosed illness. Some of his individual symptoms and he does have numerous symptoms that he has listed as part of this undiagnosed condition. And some of those some of the symptoms have been alleviated at different points in time. But he is position is that he continues to suffer from the undiagnosed condition. There has never been a definitive test done to diagnose that condition and he has not received treatment as constitutionally mandated for that undiagnosed condition. So I'm trying to figure out what exactly is the nature of his claim as relates to the undiagnosed condition. And some of those some of the symptoms have been alleviated at different points in time. And some of those some of the symptoms have been alleviated as constitutionally mandated for that undiagnosed condition. I think I will reserve the rest of my time for rebuttal if there are no further questions. I see none. So you may. Mr. Eubanks. Yes, Your Honor. May it please the court. Brent Eubanks on behalf of Correct Care Solutions LLC. Dr. Nanette Val and Licensed Practical Nurse Gifford. The court asked a question about, well, first the undiagnosed condition. Here the undiagnosed condition consists of 18 separate elements that Mr. DeRossett, by my understanding, discussed at his deposition in some detail. Among those are eye irritation and pain. That is a separate diagnosis in and of itself, which was treated by an optometrist, an outside ophthalmologist with several types of eye drops. He was offered warm compresses, etc. So that is a diagnosis in and of itself, not just a symptom. And it was treated. He complains of disrupted sleep as a part of this overarching malady, which he says has been undiagnosed. Disrupted sleep was treated with nortriptyline on these facts, and also that medication was used for pain. He talks about occasional difficulty reading. Mr. DeRossett had reading glasses, and his vision complaints were discussed with the ophthalmologist and an optometrist. Many times in the record, his visual acuity was noted as either 20-20 or 20-30 at worst with the addition of prescriptive reading glasses. He cites vision irregularities and blurred vision in this group, pain in tissues of the face and head. Again, he testified at all times he had pain medication in this case. Pain medication works in all parts of the body. It's not specific as to a specific body part. He complains of headaches. Again, that was addressed via pain medication. He talks about sinus trouble. At various times when that specific complaint was raised, separate medication was prescribed to deal with that. He talks about excessive thirst, which could go to a diagnosis of dehydration, which is usually addressed by counseling the patient to hydrate and to drink water. He talks about occasional swelling and redness of the eyelids and eyes. Again, that was addressed by the ophthalmologist and via drops. He was provided by the optometrist and Dr. Val. He talks about earaches, especially in the right ear and bilateral hearing loss. His bilateral hearing loss was treated with hearing aids, for which he had at least one hearing aid, according to his own testimony at all times. The court asked a question about the one hearing aid and whether it was functional. I would note that it was functional, as evidenced by the fact that he continued to ask for batteries for that hearing aid. That was the only one in his possession. And he specifically testified. I said, Mr. Drossett, can you explain to me why you would continue to wear a non-functional hearing aid? And he specifically said, quote, because it works for my left ear. He admits that it was functional in his left ear by that testimony. Counsel, I think there may be a disagreement about what functional means here. I thought there was also evidence that it works a little bit, but not enough to hear a conversation. To that, Your Honor, I guess it's a matter of degree, and that would rely on Mr. Drossett's perception to some extent. But Mr. Drossett was offered the left hearing aid to also go out to the shop in addition to the right hearing aid, which he says was lost. But the record bears out it was actually rendered unfunctional. As to the left hearing aid, they offered him to send that off, and he refused. That was his choice, and he has a right to refuse that treatment if he chooses. But then he can't be left to complain in a civil rights action. He talks also about urine irregularities. That is devoid of any proof in the record. The urinalysis tests show no irregularities, and there's been no proof of that offered. He talks about occasional bumps and boils that was treated via antibiotics and physical examinations, various creams, including Absorbase. He talks about rashes to his thighs and arms. That becomes an element of his retaliation claim. He complains that the nursing staff, and then Dr. Val, asked him to fill out eight separate sick calls to be examined, and that was actually retaliation. They were making, I guess, a mockery or something. I don't know how he explains that, but he says that was retaliation because they asked him to separately on eight separate forms write it out and then disrobe and be physically examined in his boxer shorts. to address each of the claims he's making. And then once he's getting that medical treatment being examined, Mr. Durosset says that's retaliation against me in some way. The Absorbase also addressed his issues with rashes and thighs. He talks about difficulty swallowing, excessive phlegm, cough, and sore throat. Those cold-type symptoms and dehydration elements were also addressed in the medical records directly. He talks about abnormal blood work. There's one instance that the magistrate judge goes through that. There's no evidence of that in the record. There are reference ranges in the blood work. Mr. Durosset is a part of the chronic care clinic, which he's examined approximately every 90 days. In those situations, his blood is drawn to deal with a number of issues for the chronic care clinic. He has some gastrointestinal issues, which aren't in this case directly. He was seen and an EGD was done. He has a diagnosis related to that, and also he has some prostate concerns for which these labs are drawn. Based upon those reference ranges and the labs drawn every 90 days, there's no abnormality. There's one reference range, and I think it's about 25.2 to some other range. He comes in, let's say 25.0, and the physician doesn't find that statistically significant, and various labs use various reference ranges, and the magistrate judge pointed that out. Mr. Eubanks, I do have a question as you're going through the various assertions of symptoms. In your brief, you really focus on the affidavits of the two doctors and rely on those to say that there were no serious medical needs. Is that what you're still relying on, and did the district court rely heavily on those affidavits? The district court did not rely on the affidavit of Dr. Albert Cottrell, which was a psychiatrist. The district court's opinion did rely on Dr. Jeffrey Steve's opinions in the case about whether there was a serious medical need, but the district court also found that it was a serious medical need as to the hearing aid issue, as well as the orthopedic issue was not addressed by the district court. But the court found that there was a serious medical need, but it was very limited, and it did not include this long list of 18 separate conditions, which he says is a larger malady. I want to follow up with some questions on the doctor's affidavits, because I don't know that I've ever seen a doctor's affidavit like that in a case like this, that is so very general and conclusory, and there's two of them. One actually even makes a psychiatric diagnosis, and neither without asserting any experience in that area, and I'm not sure either one of them really set out their experience. What is your view of those affidavits and whether those are sufficient at the stage of summary judgment to be relied on? Well, in part, I think they somewhat reflect the broad nature of the record being 1,800 pages, as well as Mr. DeRossett's broad range of claims he's making, and so the physicians did that in a broader sense while reviewing 1,800 pages of records. But I would specifically note that the district court did not rely on the psychiatric testimony of Dr. Cottrell in any way, in its opinion. It did rely on the affidavit of Dr. Steve, which is supported by the medical records and recounts those records. And it may be in somewhat broad terms, but he specifically says he's reviewed those 1,800 pages, and it accompanies the medical records, which is the standard for a disagreement with treatment case. Mr. Eubanks, I'd like to address what could be an error that may have affected the district court's findings, and this is in the report that was adopted by the district court. It says DeRossett has not provided any evidence which gives rise to a genuine issue of fact regarding the lack of a functioning hearing device. That's at page 30. However, it's my understanding that the second amended complaint was made under penalty of perjury, and if that's the case under our precedent, that would be considered record evidence. That would be an affidavit in the record, Your Honor, but the various instances of how the hearing aids were addressed as far as being issued to him, being repaired, or the batteries themselves being distributed to Mr. DeRossett are also evidence considered by the physician who offered his affidavit. I believe that addresses the court's question. I'm sorry. Yeah, I think you partially answered it, but my question really is, is that a correct statement that there's no evidence in the record? I think that incorrectly assumes that the second amended complaint is not record evidence. The second amended complaint is record evidence, Your Honor, but I believe that the other evidence is what the court weighed, and it was overwhelmingly in favor of. I would also say there are individual issues as to this position, whether it's causation as to those people, but the court took a broader view in addressing this case. I want to step back to something that Judge Kelly asked about very briefly, and it is the entire medical opinion that's operative in this case is a single paragraph, because it starts off with two pages of saying, here's what Mr. DeRossetti is complaining about. Then it goes off and says, I work for the, gosh, I'm forgetting the name now, and you'd have to correct me on that, but it's your client, Correct Care Solutions, right? Yes, Your Honor. The entire medical opinion is this, I am of the medical opinion that Mr. DeRossetti received appropriate health care and that he was provided with appropriate care and treatment, period. My opinions are consistent with sound medical practice and my own professional judgment, period. That is it. That is the entire medical record, and can you really say that guys can give weight to that? I mean, it seems like a complete nothing burger. It is, well, his opinion is consistent with the record, and there's no evidence that Dr. Steeves did not hold that opinion or review, Your Honor. I said, how do we know that? He didn't go through the record and tell us what he did. He just says, I reviewed the record. I mean, that's kind of an unreviewable thing. Anyhow, I don't know that there's any good answer to it, but I'm sorry. Time's expired. I take the court's point. Thank you. Thank you, Mr. Eubanks. Did you have anything you wanted to follow up with? I believe that's the end of all. I appreciate it. Thank you. All right. Thank you for your argument. Ms. Cox, you have a couple of minutes for rebuttal. Thank you, Your Honor. Mr. Eubanks has argued different examples of where Mr. DeRossetti received treatment for some of his symptoms or separate diagnoses over the course of several years that he was incarcerated. But Mr. DeRossetti does not have to prove a complete denial of medical care. He is not alleging that he received no medical care. He is alleging that he did not receive the medical care that is mandated under the Constitution for these three separate conditions that he is briefed. His undiagnosed condition, his orthopedic issues, and his hearing loss. Just to touch on a few examples in the time that remains, Mr. Eubanks brought up some medicine that was prescribed to treat Mr. DeRossetti's depression and said that could also treat pain. But there are numerous examples in Mr. DeRossetti's medical records and his medical grievances where he notes that he was experiencing pain. So we have conflicting evidence there that creates a dispute of fact that a jury should be allowed to decide. As to his hearing aids, again, there's some conflicting evidence in the record. And there's a question of what counts as functional for hearing aids. But there is, as noted in a footnote in Mr. DeRossetti's reply, evidence in the medical records that Mr. DeRossetti's right ear is substantially more impaired than his left ear. So if he did not have a hearing aid for his right ear, he would not be able to hear out of that ear at all. And his refusal to send off his left hearing aid was out of fear that he would be left completely without any hearing aid, any ability to hear. Mr. Eubanks noted that the court weighed this evidence and came out with its decision. But really, that's not the job of the district court, to weigh the evidence, to determine credibility or fact determination. That is a question for the jury. And that is what Mr. DeRossetti wants, is to be allowed to present his case to a jury to ultimately decide these different instances of conflicting fact in the record. Touching finally on the doctor's affidavit, these, again, conflict with evidence in the record where there's clear instances where his medical conditions are noted in his medical records, in his grievances, or the denials of treatment are noted explicitly in his medical records and treatment. And so there's, again, a credibility issue here of how to weigh this evidence and how to determine what is accurate. So with that, I will conclude my argument if there are no additional questions. Seeing none, we thank both counsel for your arguments here today and your briefing. And we will take the matter under advisement.